IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthonee Patterson,                           :
                    Appellant                 :
                                              :
        v.                                    :
                                              :
Kenneth Shelton, individually and             :
in his capacity as President of the           :
Board Of Trustees, of the Church              :
of the Lord Jesus Christ of the               :    No. 2147 C.D. 2014
Apostolic Faith, Inc.                         :    Submitted: July 2, 2015

BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY                        FILED:  December 18, 2015

        Anthonee Patterson (Patterson) appeals from the order of the Court of
Common Pleas of Philadelphia County (trial court) which granted Bishop Kenneth
Shelton's (Shelton) motion to dismiss on the trial court's determination that it
lacked subject matter jurisdiction.


                    **I. Factual and Procedural Background**

        This procedural and factual history is recounted in this Court's
memorandum opinion in the case of Patterson v. Shelton, (Pa. Cmwlth., No. 2396
C.D. 2011, filed March 6, 2013), slip opinion, appeal denied, 78 A.3d 1092 (Pa.
2013).

        This marks the [fifth] time this Court has been called
        upon to review action by the [trial court] in the
        underlying tangle of controversies involving a religious
        schism which has spanned over two decades.  In all,

seven lawsuits were instituted by various parties against a church, its corporate trustee and various officials in the Court of Common Pleas of Philadelphia County, Court of Common Pleas of Delaware County, and United States District Court for the Eastern District of Pennsylvania.[1]

The key players involved in the present offshoot of the controversy are: (1) the Church of the Lord Jesus Christ of the Apostolic Faith (**the "Church"**), an unincorporated association, founded in 1919; (2) the "Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc.", (**the "Corporate Trustee"**), a Pennsylvania nonprofit corporation formed in 1947 **to act as the trustee and hold property in trust for the Church**[2]; (3) Patterson, a life-long member, elder, and minister of the Church; and (4) Shelton, the current "Bishop" and/or "Overseer" of the Church and "President" of the Corporate Trustee.

The dispute began in 1991 when then-Bishop S. McDowall Shelton, died, leaving vacancies in the offices of "Overseer" of the Church and "President" of the Corporate Trustee. Immediately upon Bishop S. McDowall Shelton's death, Shelton and his "faction" took control of the accounts, trusts and properties of the

---

[1] These lawsuits are recounted in more detail in this Court's previous opinion in Church of the Lord Jesus Christ of the Apostolic Faith, Inc. v. Shelton, (Pa. Cmwlth. Nos. 376 C.D. 2000 and 559 C.D. 2000, filed April 10, 2001). See also Church of the Lord Jesus Christ of the Apostolic Faith, Inc., et al, v. Roddy Shelton, II, 740 A.2d 751 (Pa. Cmwlth. 1999), for an insightful history of this complex and protracted dispute. See also Joseph Askew v. Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., 644 F.Supp. 2d 584 (E.D. Pa. 2009) ("Askew I") and Joseph Askew v. Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., 776 F.Supp. 2d 25 (E.D. Pa. 2011) ("Askew II").

[2] The Corporate Trustee's Charter provided that the purpose for which it was formed was to "take, receive, have and hold and manage real and personal property in trust for the uses and purposes specified by the General Assembly of the Church" and that said purposes did "not contemplate pecuniary gain or profit incidental or otherwise to its members." Charter, June 27, 1947, at 1; Reproduced Record (R.R.) at 266a.

2

Church and Corporate Trustee. After extensive litigation initiated by two other dissident factions of the Church congregation[3] over the leadership of the Church and Corporate Trustee, the trial court ultimately determined, and this Court later affirmed, that Shelton and his Board of Trustees were in control.[4]

**[II. Patterson's Prior Appeal To This Court]**

On July 24, 1995, Patterson, as life-long member, elder and minister of the Church, commenced an action in equity against Shelton, in Shelton's individual capacity and as the President of the Board of Trustees of the Corporate Trustee.[5] Patterson alleged that since taking control of the Church and Corporate Trustee in 1991, Shelton and his Board of Trustees have misappropriated funds, "looted the Church's assets," paid themselves salaries in contravention of Church By-Laws, and funded private expenditures, lavish vacations, lingerie, cars, homes and other personal incidentals with assets which were donated and designated for Church religious and charitable missions.[6]

Patterson requested, *inter alia*: (1) the appointment of a receiver to take control of the assets of the Church held

---

[3] Patterson was the leader of one such faction.

[4] See Church of the Lord Jesus Christ of the Apostolic Faith, Inc. v. Shelton, (Pa. Cmwlth. Nos. 376 C.D. 2000 and 559 C.D. 2000, filed April 10, 2001).

[5] Erik Shelton was also named as a Defendant but on November 30, 2005, he was voluntarily dismissed from the lawsuit.

[6] Specifically, Patterson alleged that Shelton took physical possession of cash offerings designated for the Church from churches throughout the Eastern United States and converted them to his own use; converted $111,537 from the Gresham Trust, a fund held for the benefit of Church members in need of social services; converted $111,533 from a Church account held at Fidelity National Bank; converted $10,585 from the Church's "Bus Rally Money Account;" converted $64,000 from a Church account at Commonwealth Federal and Loan which was dedicated for youth studies; and converted $8,000 from two accounts at Mid Atlantic Bank donated by Church members for the purpose of financially assisting the Church's international missions. Complaint, ¶¶12(a)-(f) at 5-7; R.R. at 127a-129a.

3

by the Corporate Trustee; (2) an order requiring Shelton to issue annual financial reports for the years 1991, 1992, 1993, and 1994; and (3) an accounting.

The parties engaged in discovery. Patterson retained James A. Stavros, CPA (Stavros), a forensic financial investigator, to analyze the finances and expenditures of the Church and the Corporate Trustee. Stavros authored a report which detailed his findings that Shelton and his Board of Trustees withdrew hundreds of thousands of dollars from Church accounts with no accounting of where the funds went and that they expended Church funds on a significant amount of "personal" items and expenditures that appeared to be outside the normal course of business and outside Church laws and customs.[7] He concluded that Church accounts had declined by nearly $1 million under Shelton's control.[8]

In January 2006, the parties agreed to submit to binding arbitration. The Arbitrator concluded that the credible evidence established that Shelton had engaged in various acts of fraud, mismanagement, conspiracy, breach of fiduciary responsibilities, [and] violations of By-laws and the Articles of Incorporation in seizing corporate funds and assets and depleting bank accounts designated for Church-related purposes. The Arbitrator concluded that Shelton had diverted Church funds and assets to himself and others for his and their benefit. The Arbitrator appointed a receiver and directed Shelton to account for all Church funds removed by him or those acting with him.

Shelton filed a motion to vacate the award which the trial court denied. On appeal, this Court overturned the arbitration award because the arbitrator went beyond the

---

[7] This included vacations all over the world including, but not limited to: Cannes, France, Disney World, Switzerland, and purchases from stores such as Victoria's Secret.

[8] Shelton did not retain a financial expert to counter Patterson's report.

4

scope of his authority in fashioning relief. See Shelton v. Patterson, 942 A.2d 967 (Pa. Cmwlth. 2008). This Court remanded the matter to the trial court to determine whether Patterson was entitled to relief under the [Nonprofit Corporation Law of 1988, 15 Pa. C.S. §§ 5101-5997] NCL.

On remand, Shelton moved for summary judgment on the ground that Patterson lacked "statutory standing" under Section 5782 of the NCL, 15 Pa.C.S. §5782. Shelton argued that only an officer, director, or member of a nonprofit corporation has "statutory standing" to enforce a right of a nonprofit corporation through a derivative action. Section 5782 of the NCL, 15 Pa. C.S. § 5782, which is contained in Subchapter F governing "derivative actions," provides:

**Actions against directors, members of an other body and officers**

**(a) General rule** – Except as provided in subsection (b), **in any action** or proceeding **brought to enforce a secondary right on the part of one or more members of a nonprofit corporation** against any present or former officer, director or member of an other body of the corporation because the corporation refuses to enforce rights that may properly be asserted by it, each plaintiff must aver and it must be made to appear that each plaintiff was a member of the corporation at the time of the transaction of which he complains. (Emphasis added.)

15 Pa. C.S. § 5782.

Shelton pointed to the Corporate Trustee's Articles of Incorporation which limited its membership in the nonprofit corporation to its Board of Trustees. Shelton asserted that because Patterson was never a member of the Board of Trustees he was never a "member" of the Corporate Trustee, and thus, he had no "statutory standing" to bring claims that are derivative of the Corporate Trustee's rights.

5

The trial court agreed that under Section 5782 of the NCL, Patterson could only bring suit if he was a member of the Corporate Trustee at the time of the alleged events outlined in the Complaint. The trial court looked to Article IX of the Articles of Incorporation which states: "membership in the corporation [Corporate Trustee] shall consist of those persons serving as members of the Board of Trustees." The trial court concluded that because Patterson had never been a member of the Board of Trustees he was not a member of the Corporate Trustee. The trial court reasoned that because the NCL created the cause of action and designated who may sue; standing was a jurisdictional prerequisite to any action. Grom v. Burgoon, 672 A.2d 823 (Pa. Super. 1996). The trial court "finding no possible way to affirm that [Patterson] has standing" granted the motion for summary judgment and dismissed the case. Trial Court Opinion, January 25, 2012, at 3.

Patterson, slip opinion at 1-6.


### III. This Court's Analysis And Disposition Of Patterson's Prior Appeal

[This Court rationalized in Patterson]:

An example of derivative claims previously asserted against the Corporate Trustee and Shelton (and others) is found in the related case commenced by Joseph Askew (Askew) in the United States District Court for the Eastern District of Pennsylvania in 2009. See footnote 1

In Askew I, Askew, who claimed to be a member of the Church, brought an eight-count complaint against Shelton, the Corporate Trustee and the other managers of the Corporate Trustee (collectively "Defendants"). In Count II, Askew alleged breach of fiduciary duty **owed to the Corporate Trustee**. In Count IV, Askew alleged that the Board of Trustees failed to present the members of the Corporate Trustee with an annual report containing specific financial information under Section 5553 of the

6

NCL. In Count V, Askew sought the removal of Shelton as President of the Corporate Trustee.

Defendants moved to dismiss these counts because Askew lacked standing under the NCL to bring derivative claims.

The [United States] District Court agreed that these claims were derivative because any alleged failure to satisfy a supposed duty of loyalty and care owed **to the Corporate Trustee** would "injure[] only that corporation." Askew I, 644 F.Supp. 2d at 590. The United States District Court determined Count IV was also a derivative claim because that section guarantees a nonprofit corporation "the right to self-knowledge" and that "[a]ny right that Section 5553 may confer is **a right of the corporation**, and a claim to encore [sic] this section necessarily falls within the ambit of Section 5782." Askew I, 644 F.Supp 2d at 590 (Emphasis added.) As for Count V, the [United States] District Court found that under Section 5726 of the NCL, a court is only empowered to remove a director "upon petition of any member or director" of the nonprofit corporation. Id.
. . . .
The [United States] District [C]ourt concluded that since Askew was not a member or director of the Corporate Trustee, he did not have "statutory standing" to seek these kinds of relief.

Even though the [United States] District Court found that Counts II, IV and V were derivative claims, the [United States] District Court explained that Askew's claims in Counts I and VI for breach of fiduciary duty **to the Church** and unjust enrichment for misappropriation **of Church funds** were **not** derivative of the Corporate Trustee's rights. Therefore, they were not claims "that only the Corporation's [Corporate Trustee] members directors or officers can bring." Askew I, 644 F.Supp. at 590.
. . . .

7

Similarly, in Askew I, the [United States] District Court determined, and this Court concurs, that the members of a Church's congregation suffer injury when the Church's assets, which were held in trust, are misused. Askew I, 644 F.Supp. 2d at 591. The [United States] District Court clarified that only through Askew's membership in the Church was he qualified to bring an action on behalf of the Church under Fed.R.Civ.P. 23.1 (governing standing to bring derivative actions on behalf of unincorporated associations).[9]

Here, there is no question that Patterson was a member of the Church when he instituted the action.[10] As a member of the Church congregation, Patterson was part of the beneficiary class for which the Corporate Trustee held the Church's assets in trust. As such, he has standing to bring this action to enforce his own rights and the rights commonly held by all beneficiaries to obtain restoration to the Church of its full losses. Thus, the action should not have been dismissed due to lack of standing under the NCL.

As noted, the Church is an unincorporated association. This Court notes that its conclusion that Patterson has standing is also wholly consistent with principles governing standing to sue on behalf of an unincorporated association. See Pa.R.C.P. No. 2152 (action by unincorporated association must be brought in name of member as trustee ad litem).[11]

---

[9] In Askew II, the District Court went on to find that Askew was not a "member" of the Church because he was expelled through the procedures in Article XIII of the Church's By-Laws.

[10] Shelton argues that Patterson was not a member of the Church congregation because he "abandoned" the Church. However, the record demonstrates that the Church never took any action to remove Patterson. Article XIII of the Church By-laws provided a method for the expulsion or suspension of members. The Church could have used those procedures to remove Patterson who Shelton alleges abandoned the Church, but it did not do so.

[11] To hold otherwise would, as a practical matter, insulate these most serious allegations from judicial review.

Patterson, slip opinion at 9-10 and 16-17.

This court reversed the order of the trial court and remanded to the trial court to conduct a trial on the remaining factual and legal issues raised in Patterson's complaint.

## IV. Patterson's Present Appeal

On July 15, 2014, the trial court commenced a non-jury trial. Patterson offered the following proof regarding Rita Bolognese's (Bolognese) testimony, a senior paralegal and records custodian for BNY Mellon. "She will testify to bank records which we have in our possession, that they're authentic, and that from there, certain transactions we will be questioning with other witnesses once we've established that they are true and correct copies of those records." Trial Transcript, July 15, 2014, (T.T. 7/15/14) at 29; Reproduced Record (R.R.) at 694a. The trial court responded "[s]o your argument is that she is going to testify about these records . . . [a]nd I assume it's the operative time of 91 to 94?" T.T. 7/15/14 at 30; R.R. at 695a. Patterson's attorney[12] responded "[t]hat's correct." T.T. 7/15/14 at 30; R.R. at 695a.

Bolognese recounted that she was authorized to serve as records custodian for the bank. T.T. 7/15/14 at 34; R.R. at 699a. Bolognese was provided with an affidavit from Susan McGivern, her supervisor, as to the scope of what she could testify to as custodian of records for BNY Mellon. T.T. 7/15/14 at 35-36; R.R. at 700a-71a. Following a lunch break, the trial court stated that "[t]his case

---

[12] In order to avoid confusion between Bishop Kenneth Shelton and Fincourt B. Shelton, this Court will refer to Fincourt B. Shelton as Patterson's attorney.

has a real problem in that plaintiff's attorney [Patterson] has not produced all of the records recently to the defendant [Shelton]. This is a 20-year-old case. This case is going slowly." T.T. 7/15/14 at 40-41; R.R. 705a-06a. The trial court adjourned for the day and ordered the parties "to provide to the other side copies of every single document that party intends to introduce into evidence, as well as a list of every single witness that attorney intends to call in this case. Failure to provide copies of the document today to opposing counsel will result in my precluding the document from being introduced into evidence." T.T. 7/15/14 at 41; R.R. at 706a.

On July 16, 2014, before the commencement of Bolognese's testimony, the trial court issued the following order, "I'm denying the motion to deem the admissions admitted for a variety of reasons, including the fact that . . . [y]ou [Patterson's attorney] did not include in this motion even what the request for admissions of the third set were, you included the second set." Trial Transcript, July 16, 2014, (T.T. 7/16/14) at 12; R.R. at 720a. At that time, Bolognese again took the stand and stated that "[w]hen we [took] over the bank [Mellon PSFS], we took over the records of PSFS . . . [a]nd in course of . . . changing over the accounts, we had possession of the PSFS documents." T.T. 7/16/14 at 23; R.R. at 23a. In response to the trial court's query, Bolognese admitted that she was unable to testify that "this document was prepared in the course of business of PSFS." T.T. 7/16/14 at 24; R.R. at 732a.

On cross-examination, defense counsel, Danielle Banks (Banks) asked the following question:

**Q:** So with regard to this particular document - -

**A:** Right.

10

**Q:** This particular document was not - - you don't have knowledge yourself that it was kept in the normal course, correct?
**A:** No.

**Q:** And did someone else tell you that it was kept, in the normal course?

**A:** Well, it would be someone from legal support that would tell me. Someone did tell me, yes.

T.T. 7/16/14 at 41-42; R.R. at 749a-50a.

At the conclusion of Bolognese's testimony, the trial court ruled:

And everyone is in agreement that the testimony from Mrs. Bolognese would be that she does not have any direct knowledge regarding how these documents were made or whether the record was made at or near the time or from information transmitted by someone with knowledge. So based on her inability to provide that testimony, I'm sustaining the objection to any questions or the introduction into evidence of those documents. (Emphasis added.)

T.T. 7/16/14 at 76-77; R.R. at 784a-85a.

Joseph Sweeny (Sweeny), an employee of Firstrust Bank, testified that he was familiar with financial transactions at Firstrust Bank. Sweeny stated that the withdrawal process for removal of funds from an account "would be where an individual or individuals would sign a withdrawal order and it would be processed at the teller station and they would either get cash or a check." T.T. at 86; R.R. at 794a.

11

On cross-examination, Sweeny testified that he had personal knowledge concerning Exhibit B "because my initials are on there." T.T. 7/16/14 at 90; R.R. at 798a.

The trial court ruled that "I'm going to allow the document [Exhibit 9 was 'copies of two withdrawals, two different account numbers'] to be introduced into evidence. It's not relevant for him to read what's in there. It's already into evidence." T.T. 7/16/14 at 93-95; R.R. at 801a-03a. At the conclusion of Sweeny's testimony, the trial court directed Patterson's attorney to proceed with his next witness. Patterson's attorney was unable to call his next witness because none of his witnesses responded to the subpoenas. The trial court adjourned for the day and stated that "[s]o what we're going to do tomorrow, we'll start court at 10:15 . . . [a]nd Mr. Shelton you'll tell us who your next witnesses are." T.T. 7/16/14 at 121-22; R.R. at 829a-30a.

On July 17, 2014, Patterson's attorney called Bishop Kenneth Shelton to the stand. At that time, Banks stated to the trial court that "I have two objections . . . [o]ne a procedural argument, and one a Constitutional one." Trial Transcript, July 17, 2014, (T.T. 7/17/14) at 3; R.R. at 832a. More specifically, Banks stated that Pa. R.C.P. No. 234.2 "says the notice shall be served reasonably in advance of the date upon which attendance is required." T.T. 7/17/14 at 4; R.R. at 832a. "And here, Your Honor, when we have posed a subject matter jurisdiction challenge to the Bishop being here - - this is not just any trial. This is about a church and the goings-on in the church." T.T. 7/17/14 at 4-5; R.R. at 832a-33a. The trial court responded that "[a]s an initial matter, I need to make a decision whether or not I have subject matter jurisdiction in this case . . . ." (Emphasis added.) T.T. 7/17/14 at 25; R.R. at 838a. Again, the trial court adjourned and

12

reiterated "let me just say this one more time. We'll get an e-mail from [Patterson's attorney] by 7:00 tonight whether or not he'll be calling any factual witnesses to establish subject matter jurisdiction." (Emphasis added.) T.T. 7/17/14 at 33; R.R. at 840a.

On July 28, 2014, the trial court entertained arguments concerning two motions, the "first with the defendant's [Shelton's] motion to strike the portion of the caption that identifies the plaintiff [Patterson] in the capacity as the corporate trustee . . . ." Trial Transcript, July 28, 2014, (7/28/14) at 3, R.R. at 847a. After argument, the trial court ordered that "I will grant the motion to strike the caption. The plaintiff [Patterson] did not ask leave of court, and it could potentially make a difference. However, I will grant leave to amend the caption at this point." T.T. 7/28/14 at 21; R.R. at 852a. The trial court then addressed "the motion for subject matter jurisdiction." T.T. 7/28/14 at 22; R.R. at 852a. After argument, the trial court stated "I'm going to defer my decision on this issue . . . [a]t this point, I'm still struggling, and I think I'm struggling because I don't have that much evidence, at which point I'll let counsel know that I want to hear further argument on this issue." T.T. 7/28/14 at 55; R.R. at 860a.

On July 29, 2014, the trial court continued to hear argument on whether it had subject matter jurisdiction. Patterson argued:

> I think there's more than enough here for you to find that there's a neutral principle, that you can look at the bank records, that you can look at what the title on the account is, and if it says bus rally and you find that three or four trustees personally went to the bank, took it out as cash, whatever and however they did it, and the records reflect that, then you would have to, I think, come to the decision that not only did Kenneth Shelton, but those

13

trustees serving under him were all involved in misappropriation of church funds during those years.

Trial Transcript, July 29, 2014, (T.T. 7/29/14) at 20; R.R. at 891a.

Banks responded:

I want to make sure also that the record is clear . . . . It is Article 18, wherein the bylaws specifically say . . . '[t]he tithes and offerings of whatever kind, nature or collection by any elder, local minister, or any officer or member is the property of the general elder, who is the general overseer, and that all tithes and love offerings are the personal property of the general overseer.' . . . .

Here, Your Honor, even without the bylaws, the Court wouldn't have jurisdiction. With the bylaws there can be no question, the Court has no jurisdiction. Under these bylaws, Bishop Shelton as the general overseer is the church's highest adjudicatory body. I submit to you that by denying the allegations, he has spoken to them and that is the end of this matter.

T.T. 7/29/14 at 27; R.R. at 893a.

The trial court concluded:

Based upon the arguments, based upon the case, I am granting the motion to dismiss. I do not have subject matter jurisdiction. In order for me to make a determination in this case, I would have to interpret religious doctrine of [sic] this court and the First Amendment prohibits me from doing so.

T.T. 7/29/14 at 40; R.R. at 896a.

14

## V. Issues

Before this Court, Patterson essentially argues[13]: 1) that the trial court failed to follow this Court's express directive and conduct a trial on the merits; 2) that the trial court erred as a matter of law when it determined it lacked subject matter jurisdiction to address Patterson's claim of mismanagement and diversion of Church assets and funds by Shelton; 3) that the trial court erred when it denied admission of various financial records and documents as business records under Pennsylvania Rules of Evidence 803 (Exception to the Rule against Hearsay); 4) that the trial court erred when it denied Patterson's motion in limine "to deem [Patterson's] request as admitted based upon [Shelton's] inadequate answers"; and 5) that the present matter should be remanded back to the trial court.[14]  Brief of Appellant, Statement of Questions Presented at 5-6.

---

[13] This Court's review is limited to a determination of whether the trial court abused its discretion or erred as a matter of law.  Mid Valley Taxpayers v. Mid Valley School, 416 A.2d 590 (Pa. Cmwlth. 1980).   Furthermore, the decision of the trial court will stand "if there exists sufficient evidence to justify the findings and logically sound, reasonable inferences and conclusions derived therefrom."  Groff v. Borough of Sellersville, 314 A.2d 328, 330 (Pa. Cmwlth. 1984).

[14] The trial court made the following rulings on the evidentiary motions presented by both parties:

**Evidentiary Motions**

1.The court denied the Plaintiff's [Patterson's] Motion in Limine to Deem as Admitted Plaintiff's Requests for Admissions.
2. The court granted the Defendant's [Shelton's] Motion in Limine to preclude any evidence regarding expenditures beyond the time period of 1991-1994.
3. The court granted Defendant's [Shelton's] Motion in Limine to Preclude any Evidence Regarding the Vacated Arbitration in this Matter.
4. The court deferred until trial its decision in the Defendant's [Shelton's] Motion in Limine to Preclude the Presentation of Testimony by Plaintiff's [Patterson's] Expert.  The court now dismisses without prejudice the motion because it is moot.
5. The court deferred until trial its decision in Defendant's [Shelton's] Motion in Limine to Preclude Irrelevant Witness

**(Footnote continued on next page…)**

The issue of subject matter jurisdiction was raised and argued before the trial court and ably disposed of in the opinion of the Honorable Alice Beck Dubow, Judge of the Court of Common Pleas of Philadelphia First District of Pennsylvania Civil Trial Division. Therefore, this Court shall affirm on the basis

---

**(continued…)**

Testimony. The court now dismisses without prejudice the motion because it is moot.

6. The court deferred until trial its decision in the Plaintiff's [Patterson's] Motion in Limine Seeking an Adverse Inference against Defendant's [Shelton's] Due to Spoliation of Evidence. The court now dismisses without prejudice the motion because it is moot.

7. The court denies without prejudice the Plaintiff's [Patterson's] Motion for Reconsideration it [sic] ruling on the Records of Regularly Conducted Business Exception to the Hearsay Rule as moot.

**Motions Regarding The Caption**

8. The court granted Defendant's [Shelton's] Motion to Strike the Plaintiff's [Patterson's] Unilateral Caption Change and struck the portion of the Caption that refers to the Defendant [Shelton] as the President of the Board of trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apolistic [sic] Faith, Inc.

9. The court granted Plaintiff's [Patterson's] Motion for Leave to Amend the Caption to include the Defendant [Shelton] in his capacity as the President of the Board of Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apolistic [sic] Faith, Inc.

**Motions Regarding Subpoenas**

10. All subpoenas served for these proceedings and any findings of contempt are hereby vacated.

11. The court dismisses without prejudice the Motion to Quash the subpoena duces tecum of Nathaniel Shelton-Bailey as moot.

Order of the Trial Court, July 31, 2014, at 1-2.

16

of Judge Dubow's opinion.[15] <u>Patterson v. Shelton</u>, (July Term, 1995, No. 2945), filed November 10, 2014.


_____
BERNARD L. McGINLEY, Judge

---

[15] Because the trial court properly determined that it lacked subject matter jurisdiction, Patterson's remaining arguments are moot.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Anthonee Patterson, | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Kenneth Shelton, individually and | : | |
| in his capacity as President of the | : | |
| Board Of Trustees, of the Church | : | |
| of the Lord Jesus Christ of the | : | No. 2147 C.D. 2014 |
| Apostolic Faith, Inc. | : | |

## **O R D E R**

AND NOW, this 18th day of December, 2015, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is affirmed.

_____
BERNARD L. McGINLEY, Judge

## COURT OF COMMON PLEAS OF PHILADELPHIA
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## CIVIL TRIAL DIVISION

ANTHONEÉ PATTERSON :
: JULY TERM, 1995
: No. 2945
:
:
v. :
:
KENNETH SHELTON :
:

## OPINION

### A. INTRODUCTION

On August 1, 2014 the trial court granted the Motion to Dismiss of Appellee Kenneth Shelton ("Appellee") on the grounds that the trial court did not have subject matter jurisdiction. The crux of the allegations in the Complaint was that the Appellee, the head of the Church of the Lord Jesus Christ of the Apostolic Faith ("the Church"), misappropriated church funds during the time period of 1991-1994. This court, applying the Deference Rule, determined that it could not adjudicate this dispute without interpreting church doctrine and concluded that the court lacked subject matter jurisdiction. On August 8, 2015 the Appellant Anthoneé Patterson ("Appellant") appealed this dispositive decision. (*See* Docket).

In particular, the Appellant commenced the instant case nineteen years ago, on July 17, 1995, and this litigation has a long and complicated procedural history, including multiple reviews by the Commonwealth Court of Pennsylvania ("Commonwealth Court"). (*See* Docket). Likewise, during the nineteen year life of the case, various courts, both state and federal, have



95070294500416

decided a myriad of legal and factual issues.[1] This appeal, however, involves the singular issue of whether the trial court properly held that the trial court, under the Deference Rule, lacked subject matter jurisdiction. This court decided no other issues that are relevant to this appeal.

The parties presented few facts to trial court when presenting their positions. In fact, the attorney for the Appellant chose to present no facts to support his position that the trial court had subject matter jurisdiction. The attorney for the Appellee introduced into evidence the Bylaws of the Church. Based on this and the allegations in the Complaint, the trial court concluded that it did not have subject matter jurisdiction.

## B. LEGAL DISCUSSION

### 1. The Appellant' Failed to Present Any Evidence to Establish Subject Matter Jurisdiction.

It is well established that "a plaintiff bears the unquestioned burden of establishing jurisdiction where the question of the sufficiency of his jurisdictional allegations is before the court on a motion to dismiss". Itri v. Equibank, N.A., 318 Pa. Super. 268, 278-79, 464 A.2d 1336, 1341 (1983) (internal citations omitted). Further, the court can decide questions of subject matter jurisdiction at any time during the judicial proceedings. Encelewski v. Associated-E. Mortgage Co., 262 Pa. Super. 205, 210, 396 A.2d 717, 719 (1978).

In the instant case, the Appellee raised the issue of whether this court had subject matter jurisdiction in a pre-trial motion, which was denied,[2] and again during the trial. In light of judicial economy, the trial court decided that it should bifurcate this issue and hear the factual and legal basis for the issue before proceeding on the remaining issues in the trial.

---

[1] The most recent Commonwealth Court Opinion dealt primarily with the issue of whether the Appellant had standing to proceed with this Complaint. The Commonwealth Court did not address whether the trial court had subject matter jurisdiction over this dispute.

[2] The trial court did not find the denial of the Motion for Summary Judgment to be dispositive of the issue of subject matter jurisdiction because the trial court judge who denied the motion did not issue an Opinion.

The trial court gave the parties a full day to provide evidence to support each party's position regarding subject matter jurisdiction. (N.T. 7/17/14 p. 28-32). Despite being given this time to present evidence to support the Appellant's position, the Appellant chose to present no evidence whatsoever. (N.T. 7/28/14 p. 32-33). The Appellee introduced the church's Bylaws into evidence to support the Appellee's position that the trial court lacked subject matter jurisdiction.

Since the Appellant failed to introduce *any* evidence to meet his burden that the trial court had jurisdiction, the trial court determined that the Appellant failed to meet his burden of establishing that he had subject matter jurisdiction.

## 2. Subject Matter Jurisdiction is Barred by the Deference Rule

The other basis for dismissing the Complaint in this matter is that the trial court could not adjudicate the issues in this case by applying neutral principles of law. Therefore, the Deference Rule precludes the trial court from retaining subject matter jurisdiction.

Pennsylvania courts recognize the "the long-standing common-law precept known as the Deference Rule which precludes civil courts from exercising jurisdiction over cases that would require them to decide ecclesiastical questions." Connor v. Archdiocese of Philadelphia, 601 Pa. 577, 579, 975 A.2d 1084, 1085 (2009). However, there is one exception called the "neutral principles of law approach" which allows "civil courts to exercise jurisdiction over cases involving religious institutions that can be decided based on secular legal authority." Id. at 585-586. In order to apply the "neutral principals of law approach" there must be an ability to resolve the legal issues without delving into church matters. *See* Connor.

The Pennsylvania Supreme Court has recently laid out a three prong approach to determining whether the Deference Rule should apply:

> "Therefore, we conclude that in determining whether to apply the deference rule, the fact-finding court must: (1) examine the elements of each of the plaintiff's claims; (2) identify any defenses forwarded by the defendant; and (3) determine whether it is reasonably likely that, at trial, the fact-finder would ultimately be able to consider whether the parties carried their respective burdens as to every element of each of the plaintiff's claims without 'intruding into the sacred precincts.'" Id. at 607-608 (internal citations omitted).

Various decisions from other jurisdictions lend guidance and support the trial court's decision in the instant matter. In Bible Way Church of Our Lord Jesus Christ of Apostolic Faith of Washington, D.C. v. Beards, 680 A.2d 419 (D.C. 1996) the plaintiff brought an action against a church asserting claims including negligent accounting of church funds and reporting to church members. The District of Columbia Court of Appeals held that the trial court lacked subject matter jurisdiction and stated, "a church's financial regime, including any required reports to members, necessarily reflects an array of decisions about a member's obligation to pledge funds, and about the leaders' corresponding responsibility to account for those funds, that a civil court cannot arbitrate without entangling itself in doctrinal interpretations...Accounting is an area riddled with major subjective decisions. When the entity in question is a religious society, those subjective decisions raise questions of internal church governance which are often themselves based on the application of church doctrine." Id. at 429.

Similarly, in Harris v. Matthews, 361 N.C. 265, 273, 643 S.E.2d 566, 571 (2007), the plaintiff's alleged conversion of funds, breach of fiduciary duty, and civil conspiracy. The Supreme Court of North Carolina held that the trial court lacked jurisdiction and that the First

Amendment of the United States Constitution mandates that when a church's dispute "cannot be resolved using neutral principles of law, the courts must intrude no further." Id. at 570.

Further, the court held that "determining whether actions, including expenditures, by a church's pastor, secretary, and chairman of the Board of Trustees were proper requires an examination of the church's view of the role of the pastor, staff, and church leaders, their authority and compensation, and church management. Because a church's religious doctrine and practice affect its understanding of each of these concepts, seeking a court's review of the matters presented here is no different than asking a court to determine whether a particular church's grounds for membership are spiritually or doctrinally correct or whether a church's charitable pursuits accord with the congregation's beliefs. None of these issues can be addressed using neutral principles of law." Id. at 571.

In the instant case, the Complaint alleges breach of fiduciary duty and fraud in the form of misappropriation of church funds. (See Complaint). The duty owed by an officer or director is set forth in 15 Pa.Cons.Stat.Ann. § 512. This provides that directors and officers shall discharge the duties of their positions "in good faith and with the diligence, care and skill which ordinary prudent men would exercise under similar circumstances in like positions." Further, "the test of liability of breach of fiduciary duty is whether the director or officer was unjustly enriched." Resolution Trust Corp. v. Lutz, 914 F. Supp. 1163, 1166 (E.D. Pa. 1996) (citing In re Specialty Tape Corp., 132 B.R. 297, 301 (W.D.Pa.1991) (internal citations omitted)). The measure of damages for breach of fiduciary duty is the profits lost as a consequence of the breach. Id.

To prove a civil fraud claim, the following elements must be proven by clear and convincing evidence: (1) a representation; (2) which is material to the transaction at hand; (3)

made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. Weissberger v. Myers, 2014 PA Super 80, 90 A.3d 730, 735 (2014) (citing Milliken v. Jacono, 60 A.3d 133, 140 (Pa.Super.2012)).

In the instant case, the Appellant alleges that the Appellee "routinely and flagrantly violat[ed] the Bylaws of the Corporation...[and] systematically loot[ed] the corporation's accounts and trusts as well as the regular Church collections." (Complaint ¶11). Additionally, "as a result of the....acts of the [Appellee], the corporation has become the personal instrument of the [Appellee], its assets have been depleted, it has been disabled in its religious and charitable missions, and its members have become disenfranchised." (Complaint ¶13).

The Rules and By-Laws of The General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith ("Bylaws")[3] make it clear that the Appellee, as the General Overseer of the Church, is the highest spiritual leader in the church and has absolute discretion to make decisions regarding the use of Church funds (*See* Bylaws).

In particular, the Bylaws provide, "the General Overseer...is given blanket authority to conduct all negotiations and closings in the purchasing, selling, leasing, renting, or mortgaging of any property real of personal for [the Church]... The tithes and offering of whatever kind, nature or collection by any elder, local minister, any other officer or member, is the property of the [Appellee]." (Bylaws, Article II: Article IXVII).

Therefore, the Bylaws provide that all Church property is the personal property of the Appellee. Consequently, the Appellee cannot embezzle his own personal property.

---

[3] Both parties stipulated that the controlling Church Bylaws were from 1962.

In order to determine whether or not the Appellee was unjustly enriched, the trial court would have to examine the reasonableness of the church's customs, as expressed in the Church's Bylaws.

Likewise, in order to decide whether the Appellee committed a fraud by misappropriating funds, the trial court would have to determine whether the Bylaws, which state that all funds are the personal property of the Appellee, are equitable. Once again, a question that would require the trial court to interpret the Church's governance, custom and doctrines.

After examining the elements of the claims, considering the defenses put forth by the Appellee, and weighing whether or not the trial court could evaluate the evidence without 'intruding into the sacred precincts" of the Church, the trial court properly determined that the trial court could not address any of the claims asserted in the Complaint using neutral principles of law and correctly found that the trial court lacked subject matter jurisdiction.

## C. CONCLUSION

The Appellant failed to present *any* evidence on subject matter jurisdiction, and therefore failed to meet his burden of production. Additionally, based on the evidence that the Appellee presented and the allegations in the Complaint, the trial court properly found that the trial court lacked subject matter jurisdiction.

BY THE COURT:

November 10, 2014
DATE

ALICE BECK DUBOW, JUDGE